Alexander Del Giorno, J.
This is a claim for damages for personal injuries sustained by claimant as a result of the alleged negligence of the State of New York properly to maintain the *338 paved concrete walks and pathways on the grounds of the Long Island Agriculture and Technical Institute at Farming-dale, New York. Although this claim had been filed by Mary Edith Rue, an infant over 14 years of age, by Genevieve Rue, her guardian ad litem, no petition had been filed nor order made for such appointment, prior to trial. At the trial, the court with the consent of the Attorney-General, signed an order appointing Genevieve Rue guardian ad litem, nunc pro tuno.
The testimony indicates that on January 3, 1956, at approximately 8:30 a.m. the claimant Mary Edith Rue, a student at the institute, was walking on the sidewalk immediately in front of the building known as Number 18. She was' proceeding towards her physiology class in another building and fell on the sidewalk, sustaining an injury to her right ankle, described as “an oblique fracture through the distal end of the lateral malleolus She stated that on this, her first day back at school after the Christmas vacation, that she was walking alone but that immediately in back of her was a chum and school friend, Mary Ann Muller, who had driven with her to school. The only one who testified concerning the alleged negligent occurrence was the claimant herself, except for her mother who stated that she learned of the accident when she returned home that afternoon. No reason was advanced as to why Miss Muller was not called in as a witness.
The claimant stated that at the time it was cold and that there was a drizzling rain and some snow mixed in it. She stated further that she noticed there was some ice on the sidewalk.
The United States Weather Bureau reports for January 3 show that for that day the maximum temperature was 39 degrees Fahrenheit and the minimum was 33 degrees, and that the average was 36 degrees for the day. The weather charts indicate that at about 8:00 a.m. of that day the temperature was 36 degrees and it continued the same until 10:00 a.m. when it rose to 37 degrees.
The claimant also introduced into evidence three photographs, claimant’s Exhibits 3, 4 and 5 in evidence which were taken in July, 1956 and on which she marked with a red circle the spot where she said she fell. At the location where the claimant says she fell, there is plain evidence of deterioration and breakdown of the sidewalk flags. The photographs indicate an uneven level between the flag where she fell and the one next to it, and in addition an obvious abnormal opening of some two inches between the flags. The photographs were taken during the summer when there was indication of crab grass growing *339 between the flags which no doubt was not there in January. The State offered no contradictory evidence concerning the condition of the flags but it rested on the claimant’s case.
The claimant also stated that at the time of the accident she was wearing saddle shoes with rubber soles and heels, the latter being %" high, and that she was carrying her books and her pocketbook as she was walking along the concrete path. She said that she knew the condition of the sidewalk since she was a freshman in school and had been traversing it for the months past. She said that when she fell she noticed the sidewalk was cracked and jagged when she looked around. She said further: ‘ ‘ When I fell, I was walking and looking straight ahead.” After the accident, she was helped upon her feet by two boys whom she did not know and who carried her to her class, which she attended.
She did not notify any official of the school but some friend gave her a bandage which she put around her ankle and then continued with her classes for the day. At the end of the day she drove home, and when home she told her grandmother. When her mother arrived home later, she took the claimant to Dr. Christos C. Taños who fluoroscoped the ankle, took X rays and then suggested that she go to Meadowbrook Hospital where more X rays were taken, and her ankle placed in a cast. The hospital gave her crutches and sent her home that same evening. She never returned to the hospital but was cared for by Dr. Taños who saw her at home four times and six times at his office. She lost three and one-half days from school and used the crutches for five and one-half weeks. She now was driven by a friend to and from school every day. Her medical expenses were paid by the health insurance plan to which she contributed at school. She stated that her mother notified the school by phone regarding this accident, and that four or five days later when she returned to school she herself notified Mr. MacArthur, who was in charge, and filled out a form for him.
The diagnosis made by the hospital conforms to the one made by Dr. Taños, and on his examination and in his testimony Dr. Taños stated that the prognosis was guarded. He said that complete recovery often depends on the age and health of the patient and that the younger the patient the quicker is the recovery. He stated that the pains she complains of now may or may not be permanent.
The claimant herself did not lose any appreciable time from school nor did she expend any money from her pocket, and she herself states that the residual complaints are that she tires when she is up a long time and has to sit down. The east was *340 removed by Dr. Taños on March 3, 1956, which was the last visit made by him.
The State moved to dismiss the claim on the ground that claimant had failed to establish a prima facie case; decision thereon being reserved, the State then rested and renewed the motion to dismiss. Decision on this motion was reserved.
The Attorney-General has raised the point that the court may draw an unfavorable inference from the failure of claimant to produce Mary Ann Muller, a classmate of the claimant who had been following her at the time of the accident. Miss Muller did not appear at the trial. The Attorney-General urges that the court, sitting as a jury, may construe, the evidence offered most strongly against the party who might have called a witness to support or corroborate his or her testimony or explain or contradict the evidence of the opposition.
Failure of a party to produce oral evidence is a fact to be considered in determining how much weight, if any, should be given to the evidence which he has produced. The question is one of inference for the jury, or for the trial judge, if there be no jury; it is an inference of fact, not an inference or presumption of law. (Rechil v. Fraas, 129 App. Div. 563, 564, revd. on other grounds 197 N. Y. 64.) The mere nonproduction of any witness is not sufficient to serve as the basis for an unfavorable inference; the witness must be one whom the party would naturally be expected to call. If the witness may naturally be inferred to be favorable to a party, and the testimony of the witness would be important, the burden is upon that party to account for the absence of the witness in order to escape the possibility of an unfavorable inference. (Richardson on Evidence [8th ed.], § 92.) As to the nature of the inference which may be drawn, the correct rule seems to be that the jury may construe the evidence already in the case most strongly against the party who might have called the witness to contradict or explain that evidence. (Richardson on Evidence [8th ed.], § 92; Milio v. Railway Motor Trucking Co., 257 App. Div. 640; Borman v. Phipps Estates, 260 App. Div. 657; Parkas v. Parkas, 265 App. Div. 521.)
The only testimony offered on behalf of the claimant herein was that of the claimant herself. She said that as she was walking to class she fell. No proof was offered that she fell as a result of the alleged deteriorated and broken condition of the walk or as a result of the presence or accumulation of snow and ice. There was no evidence that she caught her shoe or a part thereof on the sidewalk or that she slipped upon any snow which may have been present thereon. The court may not assume that her fall was caused by either of these situations.
*341 Further, although the claimant had been using the sidewalk for some months prior to the date of the accident, she testified that at the time she fell, she was walking and looldng straight ahead. If she had seen the alleged condition of the sidewalk prior to the date of the accident, as she must have, and if in addition there was ice and snow upon the sidewalk at the time of her fall, then she should have looked where she was walking and certainly should have kept her eyes upon the walk, at least intermittently. Her failure to do so constitutes contributory negligence on her part.
“ A municipality’s liability depends on whether or not, having in mind the circumstances of each case, it has neglected and failed to keep its public thoroughfares whether the sidewalk of a street or the pathway in a park in a condition reasonably safe for pedestrians.” (Loughran v. City of New York, 298 N. Y. 320.)
The court finds that under all of the circumstances. of this case, the State has not been negligent in its maintenance of the sidewalk. No proof has been submitted by the claimant to indicate that the alleged injuries sustained by her were the result of the negligence of the State.
The motions to dismiss made by the State, upon which decision was reserved, are hereby granted.
The claim is dismissed.
This constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act.
Let judgment be entered accordingly.
Claimant may submit findings within 20 days.